## APPEAL OF CHATTANOOGA MATTRESS CO.

Docket No. 3714.    Decided July 28, 1926.

MARCH 1, 1913, VALUE OF LAND.—Comparative selling values of two nearby tracts of land shortly prior to and following March 1, 1913, *held*, to be proof of the March 1, 1913, value of petitioner's property.

*Charles C. Moore, Esq.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits taxes for the years 1919 and 1920 in the amount of $3,187.30, reduced to $3,159.91 by the overassessment of $27.39 for the year 1921. The deficiency arose chiefly from the refusal of the Commissioner to accept the March 1, 1913, value placed upon certain real property by the taxpayer for the purpose of computing the gain from the sale in 1919.

### FINDINGS OF FACT.

The taxpayer is a Tennessee corporation with its principal office at Chattanooga.

On July 1, 1912, the taxpayer purchased for $8,500 lot No. 2, 50 by 243 feet, located on the corner of Market and First Streets, Chattanooga, and on August 1, 1919, sold the property for $15,000. On this property was a two-story brick building about 50 by 100 feet. It was in bad condition, had been vacant for a number of years, and was about 20 years old at the time the property was acquired. Some repairs were necessary before the taxpayer could occupy the building.

On June 20, 1912, there was sold for $6,500 lot No. 5, 50 by 200 feet, located on Market Street between First and Second Streets. On this property was a two-story brick building in good condition.

On May 1, 1913, there was sold for $12,000 lot No. 7, 59 by 200 feet, located on the corner of Market and Second Streets. On this property were some dilapidated wooden shacks of little or no value. In June, 1912, lot No. 7 had no greater value than lot No. 5.

In January or February, 1913, the Chattanooga Mattress Co. received an offer of $12,500 for its property but refused it. Thereafter, the taxpayer, in making up the inventory of its assets, advanced the value of its property to $12,500 on its books.

On May 1, 1909, a bill was enacted by the General Assembly of the State of Tennessee authorizing Hamilton County to construct a bridge across the Tennessee River from Chattanooga to the north

bank of the river, and to issue in payment of the same the bonds of the said county in an amount not to exceed $250,000.

On February 17, 1911, the said General Assembly, by enactment, authorized the construction of the bridge across the Tennessee River from Market Street, in the City of Chattanooga, to the north bank of the said river, and to issue and sell, for the purpose of paying for the bridge, negotiable coupon bonds in an amount not to exceed $375,000.

On July 10, 1911, the Quarterly County Court of Hamilton County, Tennessee, in accordance with the authority conferred on the county by the Act of February 17, 1911, of the General Assembly, appointed the Market Street Bridge Commission to employ a competent engineer to make all necessary surveys, plans and specifications for the construction of the bridge, and to supervise the work.

On September 18, 1913, the General Assembly repealed the Acts of 1909 and 1911 and enacted a bill, the pertinent part of which is as follows:

Section 1. Be it enacted by the General Assembly of the State of Tennessee, that the County of Hamilton, through its Quarterly Court, a majority of the members of said Court concurring, be, and the same is, hereby authorized and empowered to construct a bridge for county purposes across the Tennessee River, in said Hamilton County in Tennessee, from Market or Broad Street, in the City of Chattanooga, to the north side of the river, and to issue and sell for the purpose of paying for same its negotiable coupon bonds in an amount not exceeding $500,000.

On October 6, 1913, the Quarterly County Court passed the following resolution:

RESOLUTION—TITLE, PROVIDING FOR THE APPOINTMENT BY THE COUNTY JUDGE OF A SPECIAL COMMITTEE OF FIVE TO REPORT BACK TO THE JANUARY TERM AS TO THE ADVISABILITY OF BUILDING A NEW BRIDGE AT MARKET STREET.

RESOLVED, That a committee of five, consisting of three members of the Court and two citizens, be appointed by the County Judge to report back to the January Term of the Court the advisability of building a new bridge at Market Street, the repairing of the Walnut Street Bridge, and any other facts necessary to enable the Court to act on these questions.

On motion of Esquire Donelson, seconded by Esquire Humphreys, the foregoing resolution was adopted as read.

On January 6, 1914 the Quarterly County Court appointed a committee to adopt plans, employ engineers, make contracts, and to superintend the erection of a bridge across the Tennessee River from Market Street to the north bank, the cost not to exceed $500,000.

There were no proceedings during the January, 1913, term of court concerning the bridge.

The taxpayer claims that the March 1, 1913, value of $12,500 was due to the decision to locate the bridge at Market Street while the Commissioner claims that there was no definite decision by the

County Court until January, 1914, and that the March 1, 1913, value was $8,500.

The taxpayer, in its petition, alleges minor errors in depreciation, disallowance of expenses omitted by the taxpayer by mistake, and adjustment of income taxes.

### OPINION.

TRUSSELL: The main issue presented in this appeal involves the March 1, 1913, value of certain real property acquired by the taxpayer on July 1, 1912, for $8,500 and sold on August 1, 1919, for $15,000. The taxpayer, in support of its claim that the March 1, 1913, value was $12,500, contends that, in view of the decision to build a bridge across the Tennessee River from Market Street to the north bank, the property values were greatly increased prior to March 1, 1913. The Commissioner, in support of his claim that the March 1, 1913, value was $8,500, the amount of the purchase price on July 1, 1912, contends that there was no change in the status of the bridge question from the date of the purchase until January, 1914, and consequently no increase in the value of the property during that period.

The public records set out in the findings of fact show that the final action locating the bridge at Market Street was in January, 1914, but there had been some agitation since 1909 for the building of a bridge, and from the evidence it seems that public opinion had crystallized in the latter part of 1912 and in the early part of 1913, and centered on the location of the bridge at Market Street. The demand for property is what sets the price, the same as for any commodity, and the offer made for a certain piece of property and the sale price of nearby property is the best evidence of the value of that piece of property. In June, 1912, there was sold for $6,500 lot No. 5, 50 by 200 feet, with a two-story brick building thereon. In May, 1913, there was sold for $12,000 lot No. 7, 50 by 200 feet, with improvements of little or no value, and the same lot was worth no more than $6,500 in June, 1912. The taxpayer bought in July, 1912 for $8,500 lot No. 2, 50 by 243 feet, with a two-story brick building thereon, and in January or February of 1913 received an offer of $12,500 for the property.

Whether or not the County Court had finally decided to locate the bridge at Market Street, the General Assembly of the State had authorized the construction of the bridge in that locality, public opinion had centered on Market Street as the location, and there was a demand for property on Market Street, thus increasing the value of the property. Property owners are always keen to sense the effect of coming events upon values of their property. They do not wait

for the actual construction of a public improvement but they discount the effect of such improvement upon their property values as soon as the expectancy of such improvement has become fixed in the public mind, and both sellers and buyers seek to benefit from the anticipated effect of such improvements. The two sales herein referred to as made in June and July, 1912, and the sale made in June, 1913, seem to be convincing evidence that the increase in the value of properties in the neighborhood in question took place between July, 1912, and June, 1913. We are of the opinion that the gain realized from the sale of the property in question should be computed on the basis of a March 1, 1913, value of $12,500, and have so found. In all other respects the determination of the Commissioner is approved.

> *Order of redetermination will be entered on*
> *15 days' notice, under Rule 50.*